**CUSTODIO & DUBEY, LLP**
Robert Abiri (SBN 238681)
445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Facsimile: (213) 785-2899
E-mail: abiri@cd-lawyers.com

**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596
E-mail: awand@wandlawfirm.com

*Attorneys for Plaintiffs and the Putative Classes*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

JONATHAN RUSOFF and MICHAEL
MERABI, on behalf of themselves and all
others similarly situated,

        Plaintiffs,

      v.

THE HAPPY GROUP, INC., a corporation;
and DOES 1 through 10, inclusive,

        Defendants.

CASE NO.: 4:21-cv-08084

### CLASS ACTION COMPLAINT

1. Violation of California Consumer
   Legal Remedies Act
2. Violation of California False
   Advertising Law
3. Violation of California Unfair
   Competition Law
4. Breach of Express Warranty
5. Breach of Implied Warranty
6. Intentional Misrepresentation
7. Negligent Misrepresentation
8. Unjust Enrichment

### DEMAND FOR JURY TRIAL

Plaintiffs Jonathan Rusoff and Michael Merabi ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against Defendant The Happy Group, Inc. and Does 1 through 10 ("Defendant" or "THG"), based on THG's false and deceptive advertising and labeling of its egg products. Plaintiffs make the following allegations based on the investigation of their counsel, and on information and belief, except as to allegations pertaining to Plaintiffs individually, which are based on their personal knowledge.

## INTRODUCTION

1.     This case is predicated on a systemic course of false, misleading, and unlawful conduct: THG has falsely and deceptively represented that its eggs are pasture raised when they are not.

2.     Pasture raised eggs are superior to other eggs. The term "pasture" has a specific meaning in the egg industry and to consumers, as certain environmental conditions must be met in order to represent the eggs are pasture raised or raised on pasture. The ability of hens to roam outside on pasture during the day is what makes pasture raised eggs the highest standard of egg. Hens that have ample space to roam and forage on pasture are happier, healthier, and produce higher-quality and better-tasting eggs.

3.     Plaintiffs and other consumers purchased THG's eggs based on the reasonable belief that the eggs were pasture raised. Had Plaintiffs and other consumers known the truth—i.e., that THG's eggs are not pasture raised—they would not have purchased them or they would have paid less for them. Thus, Plaintiffs and other consumers have suffered economic injury as a result of THG's deceptive pasture raised claim. Plaintiffs and other consumers have also suffered a financial injury in the form of paying a price premium that pasture raised eggs command in the market.

4.     Plaintiffs seek relief in this action individually, and on behalf of all other similarly situated individuals who purchased THG's falsely and deceptively labeled eggs during the statute of limitations period, for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*,

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and for breach of express and implied warranty, intentional and negligent misrepresentation, and unjust enrichment.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and THG is a citizen of a state different from at least some members of the proposed Classes, including Plaintiffs.

6.     This Court has personal jurisdiction over THG because THG has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California, through its sale of the goods and products in California and to California consumers.

7.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff Rusoff's claims occurred in this District. Plaintiff Rusoff resides in this District and he purchased THG's eggs in this District during the statute of limitations period.

## PLAINTIFFS

8.     Plaintiffs believed they were buying and eating eggs from hens that were raised according to the highest standards of life and health for hens—i.e., that they were buying and eating pasture raised eggs. They formed this reasonable belief based on the representations that THG makes on the egg cartons themselves. This belief was an important part of their decision to purchase THG's eggs.

9.     Plaintiff Rusoff is a citizen of the United States and the State of California and he currently resides in Alameda County. Plaintiff Rusoff has regularly purchased THG's eggs over the past several years. Most recently, in October 2021, Plaintiff Rusoff purchased a one-dozen carton of THG's "Organic Free Range Pasture Raised on Over 8 Acres" eggs in Oakland, California. In purchasing these eggs, Plaintiff Rusoff saw and relied on the carton's claim that the eggs were "Pasture Raised on Over 8 Acres". Plaintiff Rusoff's reasonable belief that the eggs were pasture raised, as expressly represented, was an important factor in his decision to purchase

the eggs. In other words, Plaintiff Rusoff would not have purchased the eggs, or he would have paid less for them (i.e., he would not have paid a price premium), but for the pasture raised claim. Because the eggs are not pasture raised, Plaintiff Rusoff suffered injury in fact and lost money as a result of THG's misleading, false, unfair, and deceptive practices, as described herein.

10.     Plaintiff Merabi is a citizen of the United States and the State of California and he currently resides in Los Angeles County. In or around June 2021, Plaintiff Merabi purchased a one-dozen carton of THG's "Free Range on Pasture" eggs. In purchasing these eggs, Plaintiff Merabi saw and relied on the "Pasture" claim made on the carton. Plaintiff Merabi's reasonable belief that the eggs were pasture raised, as expressly represented, was an important factor in his decision to purchase the eggs. In other words, Plaintiff Merabi would not have purchased the eggs, or he would have paid less for them (i.e., he would not have paid a price premium), but for the pasture raised representation. Because the eggs are not pasture raised, Plaintiff Merabi suffered injury in fact and lost money as a result of THG's misleading, false, unfair, and deceptive practices, as described herein.

11.     Although Plaintiffs currently believe that THG's hens are not pasture raised, they cannot trust any of THG's representations. In addition, Plaintiffs lack personal knowledge as to the specific conditions under which THG raises its hens, thereby preventing them from being able to verify the truthfulness or accuracy of THG's representations. Therefore, even though Plaintiffs would like to continue purchasing THG's eggs, they will for the time being refrain from doing so. This is a tangible and ongoing harm to Plaintiffs. Class members will also continue purchasing THG's eggs, reasonably but incorrectly believing that they are pasture raised, resulting in a continuing harm to them as well.

12.     Although Plaintiffs seek monetary damages in this case, such damages alone are insufficient to remedy the ongoing harm that is being caused to Plaintiffs and the Class. Plaintiffs do not assert claims for personal injuries, however, given the importance of a person's ability to make an informed decision about the food they put into their bodies, recovery of damages alone would be an insufficient and complete remedy. As such, injunctive relief requiring THG to cease its false and deceptive labeling practices with respect to its eggs is necessary and appropriate.

**DEFENDANT**

13.     THG is a Delaware corporation that maintains its principal place of business and headquarters in Rogers, Arkansas. It markets and distributes eggs throughout the State of California and the United States. THG's eggs are sold in retail outlets, such as Ralphs, Vons, Sprouts, Grocery Outlet, etc.

14.     The true names and capacities of DOES 1 through 10, inclusive, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue such DOE defendants under fictitious names. Upon information and belief, each Defendant designated as a DOE is in some manner highly responsible for the occurrences alleged herein, and Plaintiffs' and Class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such DOE defendants. Plaintiffs will seek leave of the Court to amend this Complaint to allege the true names and capacities of such DOE defendants when ascertained.

**FACTUAL ALLEGATIONS**

**A.     The Eggs at Issue.**

15.     Four types of THG's eggs are at issue in this case: "Free Range on Pasture", "Heritage Free Range on Pasture", "Organic Free Range on Pasture" and "Organic Free Range Pasture Raised on Over 8 Acres" (collectively referred to as the "Eggs").

**B.     The Egg Standards.**

16.     The U.S. egg industry is notorious for the unethical treatment of hens. The vast majority of egg-laying hens in the U.S. are raised under a battery cage system, meaning they are confined to small cages for their entire lives. They never see the light of day. In short, the hens are raised under deplorable conditions.

17.     Hence, advanced animal welfare standards were developed to distinguish between the living conditions of egg-laying hens. The advanced animal welfare standards serve as guidelines to the egg industry and they provide meaningful information to consumers—i.e., they signal quality of care for the hens, which in turn, signals quality of eggs. It is well known that the nutritional content of pasture raised eggs is superior to that of other eggs.

CLASS ACTION COMPLAINT

18.     Two of the primary organizations responsible for the advanced animal welfare standards are the American Humane Association ("AHA") and Humane Farm Animal Care ("HFAC"). These organizations provide a third-party audit and certification program consistent with their standards. The AHA and HFAC have overlapping, objective animal welfare standards regarding the classifications of eggs, as described below.

19.     Many egg producers/sellers participate in this program and proudly advertise these certifications on their egg cartons. Consumers rely on these standards when making decisions at the store regarding which eggs to purchase. In other words, the advanced animal welfare standards are widely advertised by egg producers/sellers and relied upon by consumers.

20.     Each of the three standards, in order from lowest to highest in terms of quality, are described below.

21.     **Cage Free Eggs**. These eggs come from hens that are not kept in battery cages. However, the hens spend no time outdoors, and they may be provided with only a single square foot of space within a barn. They, like hens producing conventional eggs, consume feed that consists primarily of corn and/or soy.

22.     **Free Range Eggs**. These eggs come from hens that are raised in conditions similar to those of cage free hens, except that the hens are provided up two square feet of barn space. The only other difference from the cage free standard is that the free range standard requires some limited outdoor access. But the reality is that free range hens almost never go outside because they are densely packed into a barn with small doors (often referred to as "popholes") that lead to an enclosed field or a caged porch with concrete or dirt flooring. In short, free range hens do not regularly go outside, much less roam and forage for food in open fields. They also consume feed that consists primarily of corn and/or soy.

23.     **Pasture Raised Eggs**. This is the gold standard for eggs. It is markedly different from the inferior cage free and free range standards. As a general matter, pasture raised eggs, or eggs raised on pasture, are produced from hens that go outside, are exposed to sunlight and fresh air, and forage in fields. There are several requirements under the animal welfare standards that ensure this.

CLASS ACTION COMPLAINT

24.     ***First***, pasture raised hens must be provided at least 108 square feet of open field per hen to roam. This is equivalent to 10 acres for every 4,000 hens. In stark contrast, free range hens need only be provided with 21.8 square feet per hen, or just 20% of the open space that pasture raised hens are afforded.[1] This additional space is important to the health and happiness of the hens. Hens that are densely packed amongst each other are prevented from engaging in natural behaviors, such as extending their wings, stretching their necks to forage, moving about, dust bathing, and properly roosting and resting. The ability to move through a variety of natural postures is important for overall bone and muscle strength. Allowing hens to engage in natural behaviors also alleviates welfare problems. For example, stressed hens will often engage in feather pecking of weaker hens and even self-mutilation.

25.     ***Second***, the fields or pastures for pasture raised hens must consist mainly of living vegetation. This requires active management of the fields or pastures with reseeding to encourage regrowth of vegetation. The pastures must also be rotated to help ensure there is live vegetation. This can be accomplished through the use of mobile barns. Living vegetation is important because, when given the opportunity, hens will spend a majority of their active time foraging, which consists of pecking, scratching, harvesting seeds, and eating insects. In contrast, no vegetation requirements exist with respect to fields for free range hens, and consequently, the outdoor space to which they have access is often barren. Free range hens do not forage in fields. Their diet is different as a result.

26.     ***Third***, pasture raised hens must be outdoors year-round. Pasture raised hens can only be confined to barns for a total of two weeks out of the year, and only in cases of inclement weather. By contrast, free range hens can be denied access to outdoor space during both inclement weather and the entire winter. In other words, free range hens can be denied outdoor access for well over 25% of the year.

---

[1] Under the HFAC standard, pasture raised hens must be placed on pasture for at least 6 hours per day.

27.     In sum, pasture raised hens are raised under superior and more humane conditions than free range hens. They are given approximately 500% more outdoor space per hen, their outdoor space must consist of live vegetation, and they are provided outdoor space for approximately 400% more days per year. Collectively, this provides pasture raised hens with living conditions that most closely resemble their natural environment. Having exposure to sunlight and fresh air, eating a diet that includes seeds and insects, and being able to engage in natural behaviors, is foundational to the hens' happiness and wellbeing. As discussed below, these hens also produce higher quality eggs as a result.

**C.     THG's Pasture Raised Claim is False and Deceptive.**

28.     THG has engaged in the false and deceptive advertising alleged herein for one reason—to maximize profits. This, in turn, boils down to a simple calculus: free range eggs are cheaper and easier to produce, while consumers prefer and pay more for pasture raised eggs. Thus, passing off free range eggs as pasture raised eggs is a highly effective—albeit unlawful—means of expanding profits and profit margins in a competitive industry.

29.     THG systematically use the well-known "pasture" terminology in order to deceive consumers. Indeed, there is no plausible reason for THG to use the term "pasture" to describe its free range eggs other than to propagate the misconception that the Eggs are pasture raised. This can be seen from images of the Egg cartons set forth below:

**Figure 1: Free Range on Pasture**



1

**Figure 2: Heritage Free Range on Pasture**



**Figure 3: Organic Free Range on Pasture**



**Figure 4: Organic Free Range Pasture Raised on Over 8 Acres**



30.     Each of the Eggs cartons' prominently bear the term "pasture". However, as discussed herein, the Eggs are not raised under conditions that comport with the meaning of the term "pasture." Images of eggs with smiley faces also adorn the packaging. *See* **Figure 1-3**. One of the Egg cartons bears the phrase "PASTURE RAISED ON OVER 8 ACRES".[2] *See* **Figure 4**.

31.     These representations, which are seen by the consumer at the point of purchase because they are printed on the cartons themselves, taken in isolation and as a whole, create the unmistakable impression that the Eggs are pasture raised.

32.     Brand names themselves can also be deceptive. Part and parcel with the above, THG's brand name bolsters the misconception that the Eggs are pasture raised because it implies that THG is an ethical company that treats its hens humanely, which in turn, results in healthier eggs. THG uses the words "happy" and "healthy" to describe its hens, and it also calls them "pasture raised", as evidenced by the following tweets from THG posted on March 6, 2021.

**Figure 5**



---

2  The phrase "Over 8 Acres" is also deceptive because it implies ample space to roam on pasture. Of course, the size of land is meaningless without the other piece of the equation, namely, the number of hens. THG houses between 16,000-20,000 hens per farm, which is equivalent to just 21.8 square feet of outdoor space per hen (assuming 16,000 hens on an 8-acre farm).

1  **Figure 6**

2

3

4

5

6

7

8

9

10

11

12

13

14



15

16       33.     THG's presence on other social media platforms confirms its intent to convey the

17  message to the public that the Eggs are healthy, happy, and pasture raised. For example, THG has

18  used the hashtags "#pasture" and "#pastureraised" in reference to its Eggs on its official Instagram

19  account. In other words, THG has intentionally directed Instagram users searching for "pasture"

20  and "pasture raised" to its posts. An example can be seen from this March 19, 2021 Instagram Post

21  from THG.

22  **Figure 7**

23

24

25

26

27

28



34.     Despite the foregoing, none of the Eggs are pasture raised. In fact, THG's hens are only afforded average daytime access to an outdoor area of approximately 21.8 square feet per hen. This falls well short of the 108.9 square feet per hen of outdoor space that must be provided in order to make a pasture raised claim. THG has also previously acknowledged that it maintains 0.5 acres per 1,000 hens. Under the pasture raised standard, 2.5 acres of outdoor space is required for 1,000 hens. In other words, the pasture raised standard requires approximately 500% more outdoor space than that provided by THG to its hens. Further, THG does not provide its hens with access to live vegetation, nor does it provide year-round outdoor access, in compliance with the pasture raised standard.

35.     At its core, THG's hens, when compared to pasture raised hens, are raised in cramped, stressful environments, lacking meaningful access to roam and forage on pasture. Thus, the Eggs are not pasture raised. Passing them off to consumers as if they are is false and deceptive.

**D.      The Deceptive Pasture Raised Claim Harms Consumers.**

36.     The pasture raised claim is material. Consumers prefer to purchase pasture raised eggs, and indeed pay more for them, for several reasons.

37.     For one, many consumers base their purchasing decisions at least in part on animal welfare, and are willing to spend more for eggs that come from ethically treated hens. For example, according to a survey conducted by the AHA, nine out of ten respondents report that they are "very concerned" about farm animal welfare, while more than three-quarters of respondents stated that they are very willing to pay more for humanely raised eggs, meat, and dairy products.[3] As described above, pasture raised hens are raised under the most humane conditions for egg-laying hens. Many of the welfare problems that plague hens are alleviated by providing meaningful outdoor access which enables them to engage in natural behaviors.

38.     Consumers also prefer to purchase and pay more for pasture raised eggs because they value healthier and better tasting eggs. As described above, not only are pasture raised hens happier, but their diet is also different. Because pasture raised hens forage in fields with live vegetation, they consume insects and seeds, which is their natural diet. Commercial feed, comprised primarily of corn and soy, is not the hens' natural diet. Reasonable consumers believe that pasture raised eggs are of higher quality than other eggs. This belief is supported by studies showing that hens that are free to forage outside produce eggs with higher levels of Vitamins A and E, and Omega-3 fatty acids.[4]

39.     Plaintiffs, like many other consumers, purchased the Eggs because they believed that the hens were raised under humane conditions, foraged on pasture, and that pasture raised eggs are the healthiest standard of egg. And because of this preference, the market commands a price premium for pasture raised eggs. Plaintiffs and Class members would have paid significantly less for the Eggs (i.e., they would not have paid a price premium), or would not have purchased them at all, had they known that the Eggs are not pasture raised. Therefore, all consumers of the Eggs have suffered injury in fact and lost money as a result of THG's false and deceptive practices.

---

[3]   https://www.americanhumane.org/press-release/handsome-brook-farm-achieves-american-humane-association-certification-for-pasture-raised-eggs/ (last accessed October 15, 2021).

[4]   https://news.psu.edu/story/166143/2010/07/20/research-shows-eggs-pastured-chickens-may-be-more-nutritious (last accessed October 15, 2021).

## CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this class action pursuant to Fed. R. Civ. P 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**California Class**

All persons who purchased any of the Eggs in the State of California within the applicable statute of limitations period.

**California Consumer Subclass**

All persons who purchased any of the Eggs in the State of California, for personal, family, or household purposes, within the applicable statute of limitations period.

41.     Excluded from the Classes are the following individuals and/or entities: THG and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which THG has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

42.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

43.     Plaintiffs are members of the California Class and the California Consumer Subclass.

44.     Numerosity: The proposed Classes are so numerous that joinder of all members would be impractical. The Eggs are sold throughout the United States and the State of California. The number of individuals who purchased the Eggs during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiffs at this time, these Class members are identifiable and ascertainable.

45.     Common Questions Predominate: There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over

questions affecting only individual Class members. These questions include, but are not limited to, the following:

      a.  Whether THG misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Eggs;

      b.  Whether THG's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

      c.  Whether THG engaged in unfair, unlawful and/or fraudulent business practices;

      d.  Whether THG's unlawful conduct, as alleged herein, was intentional and knowing;

      e.  Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and if so, in what amount;

      f.  Whether THG is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

      g.  Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

46.    THG has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs on behalf of the proposed Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, THG's deceptive packaging and advertising of the Eggs. Each instance of harm suffered by Plaintiffs and Class members has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Egg cartons bear the "pasture" representation, but none of the Eggs even come close to meeting the pasture raised standard. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

47.    <u>Superiority</u>: Because of the relatively small amount of damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual

basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

48.     <u>Typicality</u>: The representative Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by THG's uniform unlawful conduct as alleged herein.

49.     <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with the interests of the members of the proposed Classes they seek to represent, and they have retained counsel competent and experienced in similar class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiffs and their counsel.

50.     THG has also acted, or failed to act, on grounds generally applicable to Plaintiffs and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq*.**
**(*For the California Consumer Subclass*)**

51.     Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

52.     Plaintiffs bring this claim individually and on behalf of the members of the proposed California Consumer Subclass against THG pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

53.     The Eggs are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of such Eggs by Plaintiffs and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

54.     Cal. Civ. Code § 1770(a)(2) prohibits "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services." By marketing the Eggs with their current packaging,

-15-

THG has represented and continues to represent that the Eggs have a certification (i.e., pasture raised) that they do not have. Therefore, THG has violated section 1770(a)(2) of the CLRA.

55.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…" By marketing the Eggs with their current packaging, THG has represented and continues to represent that the Eggs have characteristics (i.e., pasture raised) that they do not have. Therefore, THG has violated section 1770(a)(5) of the CLRA.

56.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Eggs with their current packaging, THG has represented and continues to represent that the Eggs are of a particular standard (i.e., pasture raised) which they do not possess. Therefore, THG has violated section 1770(a)(7) of the CLRA.

57.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Eggs as pasture raised, but not intending to sell the Eggs as such, THG has violated section 1770(a)(9) of the CLRA.

58.    At all relevant times, THG has known or reasonably should have known that the Eggs are not pasture raised, and that Plaintiffs and other members of the California Consumer Subclass would reasonably and justifiably rely on THG's pasture raised claim made on the Egg cartons when purchasing the Eggs. Nonetheless, THG deceptively advertises the Eggs as pasture raised in order to deceive consumers into believing they are buying an ethical and healthier egg.

59.    Plaintiffs and members of the California Consumer Subclass have justifiably relied on THG's misleading representations when purchasing the Eggs. Moreover, based on the materiality of THG's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiffs and members of California Consumer Subclass.

60.    Plaintiffs and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by THG because they would have paid significantly less for the Eggs, or would not have purchased them at all, had they known that the Eggs are not pasture raised.

61.     In accordance with Cal. Civ. Code § 1780(d), Plaintiff Rusoff is filing a declaration of venue, attached as Exhibit A to this Complaint.

62.     Under Cal. Civ. Code § 1780(a), Plaintiffs and Class members seek injunctive relief only for THG's violations of the CLRA. On October 15, 2021, Plaintiffs are sending a notice letter by certified mail to THG of their intent to pursue a claim for damages under the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. If THG fails to take corrective action within 30 days of receipt of the notice letter, Plaintiffs intend to amend the complaint to include a request for damages, as permitted under Cal. Civ. Code § 1782(d).

**SECOND CLAIM FOR RELIEF**
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500**, *et seq*
(***For the Classes***)

63.     Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

64.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against THG pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

65.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

66.     THG has represented and continues to represent to the public, including Plaintiffs and members of the proposed Classes, through its deceptive packaging, that the Eggs are pasture raised. Because THG has disseminated misleading information regarding the Eggs, and THG knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, THG has violated the FAL.

67.     As a result of THG's false advertising, THG has and continues to unlawfully obtain

money from Plaintiffs and members of both Classes. Plaintiffs therefore request that the Court cause THG to restore this fraudulently obtained money to them and members of the proposed Classes, to disgorge the profits THG made on these transactions, and to enjoin THG from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs and members of the proposed Classes may be irreparably harmed and/or denied an effective and complete remedy.

### THIRD CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200, *et seq.***
(***For the Classes***)

68.    Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

69.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against THG.

70.    The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

71.    Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. THG's false and misleading advertising of the Eggs was and continues to be "unlawful" because it violates the CLRA, the FAL, and other applicable laws as described herein. As a result of THG's unlawful business acts and practices, THG has unlawfully obtained money from Plaintiffs and members of the proposed Classes.

72.    Under the UCL, a business act or practice is "unfair" if the THG's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. THG's conduct was and continues to be of no benefit to purchasers of the Eggs, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the packaging. Deceiving consumers into believing the Eggs are pasture raised when they are not is of no benefit to consumers. Therefore, THG's conduct was and continues to be "unfair."

As a result of THG's unfair business acts and practices, THG has and continues to unfairly obtain money from Plaintiffs and members of the proposed Classes.

73.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. THG's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Eggs are pasture raised. Because THG misled Plaintiffs and members of both Classes, THG's conduct was "fraudulent." As a result of THG's fraudulent business acts and practices, THG has and continues to fraudulently obtain money from Plaintiffs and members of the proposed Classes.

74.     Plaintiffs request that the Court cause THG to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the proposed Classes, to disgorge the profits THG made on these transactions, and to enjoin THG from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs and members of the proposed Classes may be irreparably harmed and/or denied an effective and complete remedy.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
(***For the Classes***)

75.     Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

76.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against THG.

77.     California's express warranty statute provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

78.     THG has expressly warranted on the Eggs' cartons that they are pasture raised. For example, THG expressly states on the carton: "Free Range on Pasture" or "Organic Free Range Pasture Raised on Over 8 Acres". However, as alleged herein, this express representation is false.

-19-

79.     This representation about the Eggs is: (a) an affirmation of fact or promise made by THG to consumers that the Eggs are pasture raised; (b) became part of the basis of the bargain to purchase the Eggs when Plaintiffs and other consumers relied on the representation; and (c) created an express warranty that the Eggs would conform to the affirmation of fact or promise. In the alternative, the representation about the Eggs is a description of goods which were made as part of the basis of the bargain to purchase the Eggs, and which created an express warranty that the Eggs would conform to the product description.

80.     Plaintiffs and members of the Classes reasonably and justifiably relied on the foregoing express warranties, believing that the Eggs did in fact conform to those warranties.

81.     THG has breached the express warranties made to Plaintiffs and members of the proposed Classes by failing to the produce the Eggs in accordance with the pasture raised standard, which was expressly warranted on the packaging.

82.     Plaintiffs and members of the proposed Classes paid a premium price for the Eggs but did not obtain the full value of the Eggs as represented. If Plaintiffs and members of the proposed Classes had known of the true nature of the Eggs, they would not have been willing to pay the premium price associated with them. As a result, Plaintiffs and members of the Classes suffered injury and deserve to recover all damages afforded under the law.

83.     Within a reasonable amount of time after Plaintiffs discovered that THG did in fact breach the express warranty, Plaintiffs notified THG of the breach.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
(*For the Classes*)

84.     Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

85.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against THG.

86.     California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a

1    merchant with respect to goods of that kind."  Cal. Com. Code § 2314(1).

2        87.    California's implied warranty of merchantability statute also provides that "[g]oods

3    to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact

4    made on the container or label if any." Cal. Com. Code § 2314(2)(f).

5        88.    THG is a merchant with respect to the sale of Eggs. Therefore, a warranty of

6    merchantability is implied in every contract for sale of the Eggs to California consumers.

7        89.    By advertising the Eggs with their current packaging, THG made an implied

8    promise that the Eggs are pasture raised. The Eggs have not "conformed to the promises…made

9    on the container or label" because they are not in fact pasture raised. Plaintiffs, as well as

10   California consumers, did not receive the goods as impliedly warranted by THG to be

11   merchantable. Therefore, the Eggs are not merchantable under California law and THG has

12   breached its implied warranty of merchantability in regard to the Eggs.

13       90.    If Plaintiffs and members of the Classes had known that the Eggs were not pasture

14   raised, they would not have been willing to pay the premium price associated with them.

15   Therefore, as a direct and/or indirect result of THG's breach, Plaintiffs and members of the

16   Classes have suffered injury and deserve to recover all damages afforded under the law.

17                    **SIXTH CLAIM FOR RELIEF**
                      **Intentional Misrepresentation**
18                           *(for the Classes)*

19       91.    Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set

20   forth herein.

21       92.    Plaintiffs bring this claim individually and on behalf of the members of the

22   proposed Classes against THG.

23       93.    THG marketed the Eggs in a manner indicating that they are pasture raised when

24   they are not. Therefore, THG has made misrepresentations about the Eggs.

25       94.    THG's misrepresentations regarding the Eggs are material to a reasonable

26   consumer because they relate to the quality of the eggs and the conditions under which the hens

27   were raised. A reasonable consumer attaches importance to such representation and is induced to

28   act thereon in making purchasing decisions.

95.     At all relevant times, THG knew that the pasture raise claim was misleading. THG intends for Plaintiffs and other consumers rely on this representation, as evidenced by THG intentionally and conspicuously placing the term of art "pasture" on the cartons of the Eggs. This can also be seen in THG's marketing campaign and social media presence. In the alternative, THG acted recklessly in making the representation without regard to the truth.

96.     Plaintiffs and members of the proposed Classes have reasonably and justifiably relied on THG's intentional misrepresentations when purchasing the Eggs, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

97.     Therefore, as a direct and proximate result of THG's intentional misrepresentations, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Eggs, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
**Negligent Misrepresentation**
***(for the Classes)***

98.     Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

99.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against THG.

100.    THG marketed the Eggs in a manner indicating that they are pasture raised when they are not. Therefore, THG has made misrepresentations about the Eggs.

101.    THG's misrepresentations regarding the Eggs are material to a reasonable consumer because they relate to the quality of the eggs. A reasonable consumer attaches importance to such representation and is induced to act thereon in making purchasing decisions.

102.    At all relevant times, THG knew or had been negligent in not knowing that that the Eggs are not pasture raised. THG had no reasonable grounds for believing its misrepresentation was not false and misleading.

103.    THG intends for Plaintiffs and other consumers rely on this representation, as evidenced by THG intentionally and conspicuously placing the term of art "pasture" on the cartons

of the Eggs. This can also be seen in THG's marketing campaign and social media presence. In the alternative, THG acted recklessly or negligently in making the representation without regard to the truth.

104.    Plaintiffs and members of the Classes have reasonably and justifiably relied on THG's negligent misrepresentations when purchasing the Eggs, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

105.    Therefore, as a direct and proximate result of THG's negligent misrepresentations, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Eggs, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**EIGHTH CLAIM FOR RELIEF**
**Quasi Contract/Unjust Enrichment/Restitution**
**(*for the Classes*)**

106.    Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

107.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against THG.

108.    As alleged herein, THG has intentionally and recklessly made misleading representations to Plaintiffs and members of the Classes to induce them to purchase the Eggs. Plaintiffs and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by THG. Plaintiffs and members of the proposed Classes have therefore been induced by THG's misleading and deceptive representations about the Eggs, and paid more money to THG for the Eggs, than they otherwise would and/or should have paid.

109.    Plaintiffs and members of the proposed Classes have conferred a benefit upon THG as THG has retained monies paid to them by Plaintiffs and members of the proposed Classes.

110.    The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the proposed Classes—i.e., Plaintiffs and members of the proposed Classes did not receive the full value of the benefit conferred upon THG. Therefore, it is

inequitable and unjust for THG to retain the profit, benefit, or compensation conferred upon them.

111.    As a direct and proximate result of THG's unjust enrichment, Plaintiffs and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by THG from its deceptive, misleading, and unlawful conduct as alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the proposed Classes, respectfully pray for the following relief:

A.    Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel;

B.    A declaration that THG's actions, as described herein, violate the claims described herein;

C.    An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Classes, including, *inter alia*, an order prohibiting THG from engaging in the unlawful act described above;

D.    An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that THG obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E.    An award of all economic, monetary, actual, consequential, and compensatory damages caused by THG's conduct;

F.    An award of nominal damages;

G.    An award of punitive damages;

H.    An award to Plaintiffs and their counsel of reasonable expenses and attorneys' fees;

I.    An award to Plaintiffs and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

J.    For such further relief that the Court may deem just and proper.

-24-

## **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the proposed Classes, hereby demand a jury trial with respect to all issues triable of right by jury.

DATED: October 15, 2021          **THE WAND LAW FIRM, P.C.**

By: /s/ Aubry Wand
    Aubry Wand

**CUSTODIO & DUBEY, LLP**

By: /s/ Robert Abiri
    Robert Abiri

*Attorneys for Plaintiffs and the Putative Classes*

CLASS ACTION COMPLAINT