**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
100 Oceangate, Suite 1200
Long Beach, CA 90802
Telephone: (310) 590-4503
Email: awand@wandlawfirm.com

**CUSTODIO & DUBEY, LLP**
Robert Abiri (SBN 238681)
445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Email: abiri@cd-lawyers.com

*Attorneys for Plaintiffs and the Putative Class*

**VENABLE LLP**
Angel A. Garganta (163957)
agarganta@venable.com
Amit Rana (291912)
arana@venable.com
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone:  415.653.3750
Facsimile:   415.653.3755

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN RUSOFF, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>THE HAPPY GROUP, INC.,<br><br>　　　　　Defendants. | Case No.: 4:21-cv-08084-YGR<br><br>**JOINT DISCOVERY LETTER** |

　　　Plaintiffs Jonathan Rusoff and Joseph Gambino ("Plaintiffs") and Defendant The Happy Group, Inc. ("THG" or "Defendant") (collectively, the "Parties") submit this Joint Discovery Letter.

### A. Plaintiffs' Position

Following extended back-and-forth discussions, Plaintiffs cut the number of custodians and the scope of and number of search terms in response to THG's generalized concerns regarding burden. Plaintiffs' proposed ESI protocol is narrowly-tailored and will lead to the production of relevant documents. A party is entitled to discovery on all relevant information unless the burden of the discovery outweighs its benefit. Fed. R. Civ. P. 26(b)(1). Both of these considerations militate in favor of Plaintiffs' proposed ESI protocol. The emails that will be produced in response to Plaintiffs' proposed ESI protocol will be relevant. Plaintiffs have done a thorough review of THG's productions to date—which was primarily based on a la carte or targeted document pulls in response to specific document requests—and based on this review, Plaintiffs are confident that both the list of custodians/search terms will lead to relevant documents. The Parties agree on four of the custodians; the disagreement pertains to whether just three custodians—all of whom are high-level employees and/or part of important email threads—should be included.

As to search terms, Plaintiffs' proposed ESI protocol is limited to a search of emails relating to specific relevant topics, such as consumer perception, marketing research, the applicable welfare standards, and pricing issues. All of these topics are relevant to the Rule 23 analysis pertaining to Plaintiffs' anticipated motion for class certification—namely, issues relating to deception, materiality, and damages. Courts have compelled the production of emails relating to analogous issues. *See*, *e.g.*, *Martinelli v. Johnson & Johnson*, No. 2:15-cv-1733-MCE-EFB (TEMP), 2016 WL 4055040, at *3 (E.D. Cal. July 28, 2016) ("[w]hatever information, marketing data, research and analysis defendants possess that shows whether consumers favorably respond to sales strategies centered on such a claim is relevant to whether that reasonable person standard is satisfied.").

Because these documents are relevant, THG bears the burden of showing why it is overly burdensome to conduct these searches and produce any relevant documents. *See Mohideen v. Calnet, Inc.*, No. 13-cv-799 MMA (NLS), 2014 WL 1028638, at *1 (S.D. Cal. Mar. 14, 2014) (once plaintiffs establish relevancy, defendants are required to produce the documents and carry a "'heavy burden'" of showing why discovery should otherwise be denied). During the Parties' meet and confer efforts, Plaintiffs requested specific information about THG's purported burden, such as the number of hits

1  that would lead to irrelevant documents in response to specific search terms. THG did not provide
2  any specific information, but instead, asserted that even doing this analysis would be too costly.[1] In
3  short, THG has provided no details in support of the proposition that (a) Plaintiffs' proposed ESI
4  protocol will lead to the production of extensive irrelevant data, or (b) that complying with Plaintiffs'
5  proposed ESI protocol will be overly burdensome or costly. A broad and vague assertion of burden
6  and costs is insufficient. *Elan Microelectronics Corp. v. Apple, Inc.*, No. 09-cv-01531-RS (PSG),
7  2011 WL 4048378, at *4 (N.D. Cal. Sep. 9, 2011) (holding the defendant must provide "specific
8  evidence, including any declarations, showing the extent of any burden.").

9   Lastly, Plaintiffs briefly respond to several of THG's assertions that distract from the salient
10 analysis. First, Plaintiffs did not refuse to collaborate regarding THG's version of the ESI Protocol.
11 Plaintiffs met and conferred with THG multiple times during the course of several months regarding
12 the ESI protocol, and culminating in an in-person meeting at THG's counsel's San Francisco office.
13 Second, during these discussions, THG repeatedly took the position that it had no obligation to run
14 any metrics regarding duplicative or irrelevant documents that would result from Plaintiffs' proposed
15 ESI Protocol. Now, perhaps recognizing that it must actually demonstrate burden, it has provided
16 additional information, but even this showing remains insufficient, as despite THG's purported costs,
17 there is no reason to believe that the search terms/custodians proposed by Plaintiffs will not generate
18 a considerable number of relevant documents. For example, the notion that search terms such as
19 "mislead*" are likely to generate irrelevant documents simply because they are unconnected to the
20 word "pasture" is a red herring. THG's literal approach is unreasonable—if THG believed that its
21 free range claim had the capacity to deceive consumers (e.g., an email stating, "are our cartons
22 misleading? we do say free range"), that bears on Plaintiffs' theory that the pasture raised claim is
23 deceptive even if the word "pasture" is not in the email, and is encompassed by existing document
24 requests. *See*, *e.g.*, RFP 17 (seeking communications discussing the "language of the pasture
25 representation," including any alternative words or phrases).

---

[1] Relatedly, THG's argument that Plaintiffs delayed and are seeking this relief in bad faith is inaccurate. The parties agreed that THG would produce documents on a rolling basis while they continued to meet and confer on the ESI protocol.

**B.     THG's Position**

At the outset, THG corrects four misstatements above. ***First***, Plaintiffs say that THG's production is "primarily… a la carte or targeted… pulls." This is wrong because THG collected and produced documents through targeted pulls ***and*** ESI from the email accounts of THG's six key employees. ***Second***, Plaintiffs say that THG said "it had no obligation to run any metrics…" This is wrong because, although THG first expressed reluctance, THG re-collected a sample custodian to provide Plaintiffs with metrics in advance of the in-person meet-and-confer (at a vendor cost of $4,320). Of the 228,869 total documents that THG has collected (over 200,000 of which came solely from re-collecting this one custodian), 68,908 hit on Plaintiffs' terms (30% of the collection). ***Third***, Plaintiffs say that they can propose terms "unconnected to the word 'pasture.'" But Plaintiffs' requests define the "PASTURE REPRESENTATIONS" at issue to include "pasture." *See* **Ex. A** (definition 8). ESI terms are dependent on discovery requests; here the requests are focused on "communications… relating to the PASTURE REPRESENTATIONS." **Ex. A** (*e.g.*, Nos. 15 and 17). THG's objections also underscore that THG will produce emails that relate to "pasture." **Ex. B.** And Plaintiffs never challenged them. ***Fourth***, Plaintiffs speculate that the word "mislead*" might yield relevant documents because Plaintiffs speculate that "mislead" might be in a document about "free range." But "free range" is not at issue because the allegedly misleading word is "pasture." Ultimately, Plaintiffs seek an expensive do-over without establishing relevance or confronting the limits of Plaintiffs' requests and THG's objections. And the timing of this dispute strongly indicates that Plaintiffs are looking for new claims or to generate settlement leverage.

The timeline is that Plaintiffs served discovery on May 6, 2022. (**Ex. A**). THG timely objected (**Ex. B**) and proposed a protocol. THG updated the protocol on July 6. *See* **Ex. C**. Plaintiffs refused to commit to a protocol for months, leaving THG to use **Ex. C** or else let the case stall. Then on August 19, two months later, Plaintiffs asked to add 14 custodians and 32 search terms (since reduced to 28) over a longer time. Plaintiffs now seek any email that contains: mislead*, decept*, deceiv*, percept*, perceiv*, confus*, define*, definition, survey*, research*, conjoint, premium*, audit*, and standard* w/10 ("not" or meet or met…) ***regardless of whether the email says pasture.*** **Ex. D.**

THG has now substantially completed document discovery, responding to more than 68

3

requests by producing: (1) labels and cartons; (2) online and social media ads (website, videos, social media posts); (3) print ads; (4) consumer and market research regarding "pasture raised," "cage free," "free range," or consumers' purchasing decisions regarding eggs; (5) org charts; (6) certifications; (7) growing standards; (8) supplier contracts; and (9) pricing and sales data (including Nielsen data). Additionally, THG ran **Ex. C** to collect and produce all responsive emails containing the word "pasture" with other terms such as "rais*", "rang*", and "acre*." THG pulled emails from its six key custodians: (1) Dan Arnsperger (CEO during the time at issue); (2) Sean Womack (VP of Marketing during the time at issue); (3) Jim Hauskey (Director of Marketing): (4) Kelsey Sisson (Director of Brand Marketing); (5) Alex Worley (current CEO and then-VP of Supply Chain); and (6) Cheryl Rossi-O'Reilly (VP of Insights and Analytics). These include the decisionmaker(s) who developed the pasture statements. THG incurred more than $17,154.78 in outside vendor costs to produce more than 12,000 documents (>85,000 pages), and over $200,000 in attorney time. THG is proud of its production and Plaintiffs do not complain about a single specific request or objection.

     Rule 26(b)(1) provides that parties may obtain discovery that is: (1) relevant; and (2) proportional to the needs of the case, considering the importance of the issues, the amount in controversy, the parties' access to information, the parties' resources, the importance, and whether the burden outweighs the benefit. *See Alcon Entertainment, LLC v. Automobiles Peugeot SA*, 2021 WL 8055689, at *2 (C.D. Cal. May 7, 2021) (denying motion to compel documents related to any "advertising or promotional campaigns" because the discovery was "***not connected to the promotion and campaign at issue in this case***" and therefore "***falls far short of establishing relevance or proportionality***") (emphasis added). Here, like *Alcon*, Plaintiffs' terms are irrelevant and disproportionate. For specific metrics, THG re-collected the .PST file of Dan Arnsperger. This took days and cost $4,320 in vendor costs. After just re-collecting Arnsperger (and after deduping against THG's previous collection), Plaintiffs' parameters would require a review of 56,152 new documents (48,495 of which do not include the term "pasture") and would take hundreds of hours in attorney time. Plaintiffs want this for ***nine custodians*** (at a vendor collection cost of ~$40,000 plus untold fees in attorney review). Finally, Plaintiffs' request for three more custodians is unnecessary because THG produced emails from their immediate supervisors.

| | | |
|---|---|---|
| 1 | Dated: November 22, 2022 | **CUSTODIO & DUBEY, LLP** |
| 2 | | |
| 3 | | */s/ Robert Abiri*<br>Robert Abiri |
| 4 | | |
| 5 | Dated: November 22, 2022 | **THE WAND LAW FIRM, P.C.** |
| 6 | | |
| 7 | | */s/ Aubry Wand*<br>Aubry Wand |
| 8 | | *Attorneys for Plaintiffs and the Putative Class* |
| 9 | | |
| 10 | Dated: November 22, 2022 | **VENABLE LLP** |
| 11 | | |
| 12 | | */s/ Angel A. Garganta*<br>Angel A. Garganta<br>Amit Rana |
| 13 | | |
| 14 | | *Attorneys for Defendant* |

**ATTESTATION OF E-FILED SIGNATURE**

I, Aubry Wand, am the ECF User whose ID and password are being used to file the foregoing Joint Discovery Letter. In compliance with Civil L.R. 5-1(h)(3), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: November 22, 2022                           By: */s/ Aubry Wand*