**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
100 Oceangate, Suite 1200
Long Beach, CA 90802
Telephone: (310) 590-4503
Email: awand@wandlawfirm.com

**CUSTODIO & DUBEY, LLP**
Robert Abiri (SBN 238681)
445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Email: abiri@cd-lawyers.com

*Attorneys for Plaintiffs and the Putative Class*

**VENABLE LLP**
Angel A. Garganta (163957)
agarganta@venable.com
Amit Rana (291912)
arana@venable.com
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone:    415.653.3750
Facsimile:    415.653.3755

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN RUSOFF, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE HAPPY GROUP, INC., <br><br> Defendants. | Case No.: 4:21-cv-08084-YGR <br><br> **ADDITIONAL BRIEFING RE: DISCOVERY DISPUTE** |

### A.     Plaintiffs' Position on the Custodians in Dispute

The three custodians in dispute are: Ryan Parkinson (Senior Manager of the Marketing Team), Alexander Kent (Vice President of Operation and Supply Chain Director), and Pat Bryant (Vice President of the Sales Team). Each of these individuals are part of teams/departments that played an integral and interrelated role to issues in this case. Specifically, the Marketing Team was responsible for, *inter alia*, the labeling of the class products, including the challenged statement "Pasture Raised on Over 8 Acres," as well as the broader marketing campaign (e.g., social media describing the class products as "pasture raised," etc.). The Supply Team was responsible for sourcing the eggs from farmers and ensuring compliance with relevant egg standards (e.g., whether the class products meet the American Humane Association pasture raised standard), and also coordinating with the Marketing Team on its claims based on these standards. The Sales Team was responsible for selling the products to distributors/retailers, who then sell the class products to consumers. The Sales Team's representations to third-party retailers bears on, *inter alia*, the threshold issue of whether THG complies with relevant egg standards. While the CEO and other high-level officers are currently custodians, it is critical to include the three proposed mid-level employees as custodians because they are the ones carrying out marching orders (i.e., interacting with third-party marketing companies, suppliers, and distributors/retailers) and are less likely to phrase routine business emails in the context of unforeseen litigation. Thus, their communications are both highly relevant and not duplicative.

### B.     THG's Position on the Custodians in Dispute

Plaintiffs assert that three more custodians "are part of teams/departments that played an integral and interrelated role to issues in this case." But almost everyone at THG is part of Marketing, Supply, or Sales. THG objects because THG already included the direct supervisors involved in the claims at issue. THG is not a large company where executives are distant from day to day operations. THG has ~45 employees and its 6 existing custodians had direct involvement. *First*, Plaintiffs ask for Parkinson. But Parkinson reported to the Director of Marketing (Jim Hauskey and then Sean Womack) (already custodians). Plaintiffs deposed Hauskey. And Plaintiffs know from discovery that Hauskey/Womack worked directly with third-party marketers, suppliers, and retailers.

1

*Second*, Plaintiffs ask for Kent, but Kent only commented on marketing if asked by Hauskey/Womack or then-CEO Dan Arnsperger (already a custodian). And for supply, THG included Alex Worley (then VP of Supply and now CEO) as a custodian. Plaintiffs deposed Arnsperger and a 30(b)(6) representative, so they are aware that Kent's limited involvement is cumulative. *Third*, Plaintiffs ask for Bryant, but Bryant's supervisor was Arnsperger. Bryant was not involved in marketing unless consulted by Hauskey, Womack, or Arnsperger. Bryant is cumulative for the additional reason that THG produced documents reflecting its costs and sales.

*Finally*, THG seeks permission to submit one more exhibit: Plaintiffs' 30(b)(6) Notice. This covers all issues Plaintiffs identify (standards, certifications, and sales) and Plaintiffs took the deposition. Speculation that other employees might be "less likely to phrase routine business emails" in a certain way is not enough to support more discovery. *See Nevro Corp. v. Boston Scientific Corp.*, 2017 WL 2687806, at *3 (N.D. Cal. June 22, 2017) ("Although Nevro refers to a number of individuals whose emails may be relevant… it does not explain how information from additional custodians would not be duplicative, and more importantly… proportionate….").

**A.     Plaintiffs' Position on Search Terms**

THG's last proposal was to include the following search terms: "pasture /6 rais*"; "pasture /3rang*"; and "pasture /7 acre*". Because THG's position to limit search terms to the word "pasture" is overly narrow, Plaintiffs' last proposal was to include the following search terms:

A. "pasture raised" and "pasture-raised": relates to RFP Nos. 17, 21, 32, 36, 59.

B. "mislead*"; "decept*"; "deceiv*"; "percept*"; "perceiv*"; "confus*; "define*"; definition": relates to RFP Nos. 19, 21, 34, 36, 59.

C. "survey*"; "research*"; "conjoint": relates to RFP Nos. 32-35, 36, 46-47, 59.

D. "premium*": relates to RFP Nos. 29, 31, 59, 65. 66.

E. "Vital Farms": relates to RFP Nos. 29, 31, 32, 33, 59.

F. "line pric*"; "dynamic pric*": relates to RFP Nos. 29, 31.

G. "consumer" w/10 "think*"; "consumer" w/10 "prefer*"; "consumer" w/10 "believ*"; "consumer" w/10 "understand*": relates to RFP Nos. 19, 21, 34, 36, 41, 59.

H. "standard*" w/10 "not"; "standard*" w/10 "meet*" OR "met"; "standard*" w/10

        "accept*"; "standard*" w/10 "common*"; "standard*" w/10 "meaning"; "108" w/10 "SQF" OR "S.Q.F." OR "square" OR "feet" OR "sq." OR "ft.": relates to RFP Nos. 6-14, 16, 21, 36, 38, 57, 59, 67.

    I.    "audit*": relates to RFP Nos. 36, 37, 38, 55, 57.

**B.    THG's Position on Search Terms**

    A.    "Pasture raised" and "pasture-raised." THG already ran these terms for its 6 key custodians for January 1, 2019 to October 15, 2021 and produced those documents.

    B.    "mislead*"; "decept*"; "deceiv*"; "percept*"; "perceiv*"; "confus*"; "define*"; definition." These are irrelevant unless linked to "pasture." They are not tied to the discovery requests Plaintiffs identify, which are limited to labeling, changes, and pasture representations.

    C.    "survey*"; "research*"; "conjoint." These are irrelevant unless linked to "pasture" and THG already produced its surveys and research without the need to search email.

    D.    "premium*." This is just a word that is not targeted to the case or the RFPs. THG has already produced documents in response to RFPs 29, 31, 59, 65, and 66.

    E.    "Vital Farms." This is the name of a competitor—it is not targeted to this case.

    F.    "line pric*"; "dynamic pric*." THG already produced what it had for these RFPs.

    G.    "consumer" w/10 "think*"; "consumer" w/10 "prefer*"; "consumer" w/10 "believ*"; "consumer" w/10 "understand*." These are irrelevant unless linked to "pasture." Plaintiffs' RFPs are tied to the pasture representations.

    H.    "standard*" w/10 "not"; "standard*" w/10 "meet*" OR "met"; "standard*" w/10 "accept*"; "standard*" w/10 "common*"; "standard*" w/10 "meaning"; "108" w/10 "SQF" OR "S.Q.F." OR "square" OR "feet" OR "sq." OR "ft." Many of Plaintiffs' RFPs are for documents sufficient to show, and THG produced them. The remainder are irrelevant without "pasture."

    I.    "audit*." This is not relevant without "pasture."

Should the Court order supplementation, then THG's counter (which Plaintiffs rejected) is that THG add the clause [AND pasture] to any term this Court finds appropriate and—using Plaintiffs' proposed timeframe of October 15, 2017 to April 1, 2022—run such term through the documents of the 6 custodians THG has already collected, with Plaintiffs to bear the costs.

| | | |
|---|---|---|
| 1 | Dated: December 15, 2022 | **CUSTODIO & DUBEY, LLP** |
| 2 | | |
| 3 | | */s/ Robert Abiri*<br>Robert Abiri |
| 4 | | |
| 5 | Dated: December 15, 2022 | **THE WAND LAW FIRM, P.C.** |
| 6 | | |
| 7 | | */s/ Aubry Wand*<br>Aubry Wand |
| 8 | | *Attorneys for Plaintiffs and the Putative Class* |
| 9 | | |
| 10 | Dated: December 15, 2022 | **VENABLE LLP** |
| 11 | | |
| 12 | | */s/ Angel A. Garganta*<br>Angel A. Garganta<br>Amit Rana |
| 13 | | |
| 14 | | *Attorneys for Defendant* |

**ATTESTATION OF E-FILED SIGNATURE**

I, Aubry Wand, am the ECF User whose ID and password are being used to file the foregoing Joint Discovery Letter. In compliance with Civil L.R. 5-1(h)(3), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: December 15, 2022                    By: */s/ Aubry Wand*