UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN RUSOFF, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE HAPPY GROUP, INC.,<br><br>Defendant. | Case No. 21-cv-08084-YGR   (LJC)<br><br>**ORDER REGARDING DISCOVERY DISPUTE**<br><br>Re: Dkt. Nos. 45, 49 |

The parties in this consumer class action have presented to the Court a long-running, unresolved discovery dispute concerning the contents of their Protocol for the Production of Electronically Stored Information (ESI Protocol). The parties attempted to devise a stipulated ESI Protocol that specifies, among other things, custodians and search terms. The parties, however, have failed to agree on three particular custodians (Ryan Parkinson, Pat Bryant, Alexander Kent) and search terms that would apply to all of the custodians. See Dkt. Nos. 45, 49. After the parties briefed the dispute, the undersigned submitted a tentative ruling to the parties and, on December 30, 2022, a hearing was held.

The questions now before the Court are as follows. Are Plaintiffs' proposed custodians and search strings relevant and proportionate to the needs of this case? And, should Plaintiffs bear the cost of certain additional ESI discovery ordered by this Court?

Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS Plaintiffs' request for ESI discovery from custodians Ryan Parkinson and Pat Bryant, DENIES Plaintiffs' request for ESI discovery from Alexander Kent, GRANTS the modified search string protocol provided below, and DENIES WITHOUT PREJUDICE Defendant's request to shift the cost of

certain ESI discovery to Plaintiffs.

## I.     BACKGROUND

### A.     Complaint

The class complaint alleges consumer claims under California and New York state law and damages that in the aggregate exceed $5 million. Dkt. 41. (Fourth Am. Compl.) ¶¶ 4-5. Plaintiffs allege that Defendant, The Happy Group, Inc. (THG or Defendant), engaged in false and deceptive advertising of its egg products and marketed its "free range" eggs as "pasture-raised" eggs to extract premium prices from its customers. Id. ¶ 28. THG is a Delaware corporation that maintains its principal place of business and headquarters in Rogers, Arkansas. Id. ¶ 13. It markets and distributes eggs throughout the State of California and the United States. Id. THG's eggs are sold in retail outlets, such as Ralphs, Vons, Sprouts, Grocery Outlet, etc. Id.

Plaintiffs allege that there are three animal welfare standards that distinguish between the living conditions of egg-laying hens. Id. ¶¶ 20-23. According to the allegations, the eggs that meet the standards from lowest to highest in terms of quality are classified as "cage free eggs," "free range eggs," and "pasture raised eggs." Id. Plaintiffs allege that the American Humane Association (AHA) and Humane Farm Animal Care (HFAC) are two of the primary organizations responsible for advanced animal welfare standards, and these organizations provide third-party audit and certification programs consistent with their standards. Id. ¶ 18. Many egg producers and sellers participate in these programs and proudly advertise these certifications on their egg cartons. Id. ¶ 19. The standards are widely advertised, and consumers rely on them when making their purchase decisions at stores. Id. Plaintiffs allege that THG unlawfully passes off free range eggs as pasture raised eggs to expand its profits and profit margins in a highly competitive industry. Id. ¶ 28. Based on their claims of alleged violations of various provisions of California and New York consumer law, Plaintiffs seek economic and punitive damages, as well as injunctive and declaratory relief.

### B.     Discovery

With respect to discovery in this case, on May 6, 2022, Plaintiffs served THG with requests for the production of documents (RFPs) pursuant to Rules 26 and 34 of the Federal Rules

of Civil Procedure. On June 21, 2022, THG served its objections to the requests. THG also proposed to Plaintiffs a stipulated ESI Protocol. On July 6, 2022, THG provided to Plaintiffs a revised version of the protocol that added new provisions regarding the preservation and search of ESI. Dkt. 45-3. THG's proposed ESI search provision identified six custodians and listed search terms to apply to those custodians. Dkt. 45-4. On August 19, 2022, Plaintiffs responded with its proposed ESI Protocol, including counterproposals for custodians and search terms.

The parties met and conferred regarding the discovery dispute on certain unspecified dates, and these efforts included one in person meeting. During the period in which the custodians and search terms had not yet been finalized, THG proceeded to prepare the production of ESI for six agreed-upon custodians and ran searches for responsive ESI using THG's proposed search terms. Joint Discovery Letter, Dkt. 45 at 5.

On November 22, 2022, the parties filed a joint discovery letter before the presiding District Judge in this case setting forth their dispute concerning three custodians and the search terms. Dkt. No. 45. On November 30, 2022, this case was referred to the undersigned for discovery and to resolve the present dispute. The parties filed a supplemental joint discovery letter on December 15, 2022. Dkt. No. 49. On December 19, 2022, the undersigned submitted a tentative ruling on the custodians and search terms to the parties via email and a hearing on the matter was scheduled. The undersigned also encouraged the parties to meet and confer to see if they might reach a stipulated agreement on ESI. No agreement was reached. After rescheduling the hearing at the parties' request, the Court held a two-hour hearing on December 30, 2022. The deadline for the close of fact discovery in this matter is February 28, 2023. Dkt. No. 42.

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) permits discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

3

1      Rule 26(b)(2) requires the Court to limit discovery that is unreasonably cumulative or
2 duplicative, or that the party seeking discovery has had ample opportunity to obtain, or that is
3 outside the scope of permissible discovery described in Rule 26(b)(1).  Fed. R. Civ. P. 26(b)(2).
4      The party resisting discovery "has the burden to show that discovery should not be
5 allowed, and has the burden of clarifying, explaining, and supporting its objections." Weinstein v.
6 Katapult Grp., Inc., No. 21-CV-05175-PJH, 2022 WL 4548798, at *1 (N.D. Cal. Sept. 29, 2022)
7 (internal quotation marks omitted).

**III.    DISCUSSION**

   **A.    The Needs of the Case**

In evaluating the need for discovery in this case, this Court is required to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

With respect to the issues at stake in this case, THG sells eggs, a staple consumer food product, to large-scale retailers that include grocery store chains that serve major markets in California and New York.  Plaintiffs accuse THG of misleading consumers based on the cartons, labeling, and social media messaging for its egg products, leading consumers to pay a premium based on false and deceptive packaging and advertising.  Plaintiffs seek class damages and injunctive relief.

In this case the alleged aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.  Plaintiffs are still working with their experts to establish their position with respect to the amount of damages at issue.  Plaintiffs, however, represented that the case may be valued in the range of tens of millions of dollars.

Considering the parties' relative access to relevant information, discovery in this case is asymmetrical in certain respects.  Plaintiffs are consumers who are putative class representatives. Plaintiffs have access to some marketing material, namely the cartons and social media messages that are within their reach.  Plaintiffs have virtually no access THG's internal, electronically stored

information.

At the same time, the Court must also consider the burden and expense of discovery imposed on the responding party and its resources. THG potentially has millions of items of ESI. Accordingly, the cost of production of ESI is a significant factor in its defense against this action. THG informed the Court that the cost for their vendor's collection of ESI for nine custodians would be approximately $40,000. For one sample custodian, CEO Dan Arnsperger, vendor collection costs were $4,320. And, according to THG, Plaintiffs' proposed search strings, yield such voluminous records that hundreds of hours in attorney time would be necessary to review the documents yielded by the ESI search.

With respect to the responding parties' resources, THG does business sales in the tens of millions of dollars and asserts that its profit margins are slim. THG is not a large multi-national corporation; it has approximately 45 employees.

Plaintiffs have asserted the relevancy and benefits associated with the discovery of THG's ESI. Plaintiffs argued that these communications maybe used as evidence to establish the materiality of certain alleged misrepresentations. In addition, Plaintiffs asserted that internal communication may indicate there are standards that govern THG's production of its eggs and these standards bear on the company's advertising. This is a disputed issue, as THG contends that the alleged uniform standards for egg products do not exist, and therefore Plaintiffs' claims of false advertising and misrepresentation are without merit. Compare Fourth Am. Compl. ¶¶ 18-19 with Dkt. No. 43 (Answer to Fourth Am. Compl.), ¶¶ 18-19.

Accordingly, ESI discovery must be tailored and proportionate to the needs of the case. The custodians and search protocol must be targeted at relevant information and tailored to avoid creating a burden that outweighs the likely benefits discovery.

**B.     Custodians**

Plaintiffs are seeking to collect discovery from three additional THG employees: Ryan Parkinson, Senior Manager of Marketing; Pat Bryant, Vice President of Sales; and Alexander Kent, Vice President of Operation and Supply Chain Director. Plaintiffs assert each of these individuals are members of teams that played integral, interrelated roles that bear on THG's

1    labeling and marketing of its egg products, and thus, are likely to possess relevant emails. THG,
2    however, argues that collecting ESI from these three custodians would be duplicative or
3    cumulative, because individuals in THG's control group are already ESI custodians for this case,
4    and these executives include the three custodians' direct supervisors. THG argues that given the
5    relatively small size of the company, there are no added benefits to designating both a supervisor
6    and their employee as custodians and any discovery would result in redundancies.

7    With respect to Parkinson, he is the senior manager of THG's marketing team, and thus is
8    likely to have had a significant role developing and overseeing its marketing campaigns and
9    executing the "marching orders" from higher level executives. As Plaintiffs argued, Parkinson
10   was in a position to communicate with marketing team members, and his communications could
11   reveal an internal THG strategy to pass off its free range egg products as raised to a higher
12   standard for which consumers would pay a premium price. Furthermore, the Court agrees with
13   Plaintiffs that Parkinson's communications with external marketing firms could bear on their
14   claims by providing evidence of the materiality of certain alleged misrepresentations. See
15   Friedman v. AARP, Inc., 855 F.3d 1047, 1055 (9th Cir. 2017) (actual reliance for purposes of a
16   UCL claim is inferred from the misrepresentation of a material fact) (citing In re Tobacco II
17   Cases, 46 Cal. 4th 298 (2009)); Martinelli v. Johnson & Johnson, 2016 WL 4055040, *3-4
18   (rejecting the argument that internal documents and communications beyond consumers' view
19   offer no persuasive evidence of the materiality of the alleged misrepresentations or their effect on
20   a reasonable consumer).

21   THG objects to Parkinson as a custodian because Jim Hauskey and Sean Womack, who
22   both served as Directors of Marketing, are already ESI custodians. Both Hauskey and Womack
23   worked directly with third-party marketers, suppliers, and retailers. Even so, THG does not
24   dispute that Parkinson had relevant communications with other marketing team members or
25   external marketing firms. Plaintiffs' assertions that Parkinson's communications are distinct from
26   Hauskey and Womack, and are less likely to be carefully phrased to reduce the risk of future
27   litigation, cannot be dismissed as speculation.

28   THG cites Nevro Corp. v. Boston Scientific Corp, 2017 WL 2687806, Case No. 16-cv-

6

1   06830-VC-MEJ (N.D. Cal. June 22, 2017) in support of its contention that Parkinson is
2   insufficiently justified as a custodian.  Nevro, however, is inapposite.  It is a patent case in which
3   the court rejected Nevro's proposal to have 13 ESI custodians, nearly double the number of
4   custodians ordinarily permitted in the Northern District of California's Model Stipulation for ESI
5   discovery in patent litigation.  Nevro only addressed how the information from the additional
6   custodians was relevant to its claims and did not address whether they would be duplicative and
7   disproportionate.  *Id.* At *3.

8   Here, Plaintiffs have rebutted THG's objections based on duplication and proportionality.
9   Moreover, concerns that the collection and search of Parkinson' ESI would create an undue
10  burden on THG, can be substantially mitigated by the application of appropriately narrow search
11  terms and the de-duplication of ESI across custodians.  See Williams v. Apple, Inc., 2020 WL
12  5107639, Case No. 19-cv-04700-LHK-VKD (N.D. Cal. Aug. 31, 2020) at *2.  The discussion
13  below in Part III.C. addresses the appropriate narrowing of search terms.  If Parkinson's ESI is
14  largely duplicative of the ESI already collected from Hauskey and Womack, THG may limit the
15  extent of its document review by removing the duplicate files from the three custodians'
16  collections before applying search terms and conducting a review for responsive documents.

17  Turning to Pat Bryant, due to his position as a Sales VP, he likely communicated with
18  third-party retailers and distributors, and made representations regarding pricing, premiums,
19  standards and certifications for THG's egg products, and shelf placement.  Similarly, as a leader
20  on the sales team he likely communicated with other THG employees regarding THG's sales,
21  pricing strategies, and the egg production standards that Plaintiffs allege.  THG also acknowledges
22  that Bryant was involved in communications related to marketing.  These communications could
23  provide evidence relevant to key issues in this case, including the materiality of the alleged
24  misrepresentations, the existence of uniform standards for the egg products, whether standards and
25  certifications influenced marketing strategies, and damages.  THG's objection that Bryant would
26  be cumulative of custodians Hauskey, Womack, and previous CEO Dan Arnsperger are
27  unpersuasive for the same reasons given above concerning Parkinson.

28  With respect to Alexander Kent, however, the Court denies Plaintiffs' request for ESI

discovery. Generally, the additional discovery from Kent will be less fruitful, as deposition testimony from another custodian revealed Kent's limited knowledge of marketing. Most importantly, Kent's knowledge of and communications regarding THG's supply chain is duplicative of custodian Alex Worley who previously served as Vice President of Supply. Plaintiffs have not demonstrated a significant need for Kent to serve as a custodian, such as by asserting that Worley served as VP of Supply for a minimal portion of the relevant time period. Therefore, THG's concerns regarding cumulative discovery are valid, and narrowing search terms and de-duplicating documents will not mitigate the burden.

Accordingly, ESI discovery from Parkinson and Bryant is GRANTED, and ESI discovery from Kent is DENIED.[1]

### C. Search Terms

Plaintiffs seek discovery relevant to their claims that Defendant deployed egg cartons and social media messaging that misled consumers into believing their eggs were raised to the highest standard—that they were pasture-raised. To that effect, Plaintiffs proposed the following nine discrete search strings and indicated the search string's relationship to RFPs:

A. "pasture raised" and "pasture-raised": relates to RFP Nos. 17, 21, 32, 36, 59.
B. "mislead*"; "decept*"; "deceiv*"; "percept*"; "perceiv*"; "confus*; "define*"; definition": relates to RFP Nos. 19, 21, 34, 36, 59.
C. "survey*"; "research*"; "conjoint": relates to RFP Nos. 32-35, 36, 46-47, 59.
D. "premium*": relates to RFP Nos. 29, 31, 59, 65. 66.
E. "Vital Farms": relates to RFP Nos. 29, 31, 32, 33, 59.
F. "line pric*"; "dynamic pric*": relates to RFP Nos. 29, 31.
G. "consumer" w/10 "think*"; "consumer" w/10 "prefer*"; "consumer" w/10 "believ*"; "consumer" w/10 "understand*": relates to RFP Nos. 19, 21, 34, 36, 41, 59.
H. "standard*" w/10 "not"; "standard*" w/10 "meet*" OR "met"; "standard*" w/10 "accept*"; "standard*" w/10 "common*"; "standard*" w/10 "meaning"; "108" w/10

---

[1] Defendant's request to submit Plaintiffs' 30(b)(6) notice is DENIED. The document is not necessary for the Court's decision.

"SQF" OR "S.Q.F." OR "square" OR "feet" OR "sq." OR "ft.": relates to RFP Nos. 6-14, 16, 21, 36, 38, 57, 59, 67.

I. "audit*": relates to RFP Nos. 36, 37, 38, 55, 57.

As written, these nine search strings are unduly broad and clearly disproportionate to the needs of this case. Take for example search string B. Any number of email communications sent or received by a custodian could include references to "mislead" that is entirely unrelated to Plaintiffs' claims. It is entirely plausible that references to misrepresentations or deception could concern employee explanations for their absences or late work product, or a variety of other workplace issues. References to misrepresentations and deception could even relate to actors outside of THG (e.g., public officials or business leaders accused of making false statements). Search string I is also obviously overbroad as it would lead to the production of multiple types of audits wholly unrelated to the allegations in this case. Each string is disproportionate to the needs of the case.

THG provided metrics regarding Plaintiffs' proposed search strings. Plaintiffs' proposed terms produced 68,908 hits for one sample custodian. For another custodian, Plaintiffs' terms yielded 56,152 documents. This underscores that further tailoring of the search strings is necessary to avoid unnecessary, burdensome discovery. Thus, Plaintiffs' proposed search strings A-I are DENIED.

In contrast to Plaintiffs' position, THG has argued that search strings B, C, G, H, and I must include the word "pasture". THG argues that these search strings are irrelevant because they do not include "pasture". This approach, however, is unreasonably restrictive. For example, communications may conceivably reference mislabeling free range eggs without mentioning the term "pasture". According to THG, because Plaintiffs allege that specific verbiage, namely "pasture raised" was misleading to consumers, all of their ESI requests must include the nearly identical verbiage, at least the word "pasture".

Even the case that THG cites fails to support this argument. In Alcon Entertainment, LLC v. Automobiles Peugeot SA, 2021 WL 8055689 (C.D. Cal. May 7, 2021), the court denied a motion to compel an RFP for documents because the discovery requested was "not connected to

9

the promotion and campaign at issue in this case," and thus, "falls far short of establishing relevance or proportionality." Id. at *2. Here, key terms such a "free range" and other references to living conditions, the alleged standards and certifications, are terms connected to the marketing at issue in this case. In other words, the term "pasture" alone is insufficient to capture ESI relevant to allegations that THG sold free range eggs to consumers who believed they were buying eggs raised to the highest standard of living conditions. The court in Alcon rejected requests for documents relating to *any* advertising or promotional campaigns from 160 countries around the world—documents that were not related to the product at issue in the case, a specific movie, nor the advertising or promotional campaign for that movie. In this case there are terms in addition to pasture that directly relate to the alleged misrepresentation, the carton, labeling, and social media messaging and egg products at issue. THG's counterproposal for search strings B, C, G, H, and I is DENIED.

With respect to search strings D-F, THG did not provide a counterproposal to narrow the search string. Instead, THG simply asserted that search strings D and E are not targeted to this case. Defendant's objections to Plaintiffs' search strings D and E are valid, but can be resolved with additional search terms that tether the request to the case.

For search string F, Defendant asserts that it is unnecessary because it already produced pricing and sales data. Defendant overlooks that internal communications and records concerning its pricing strategies could provide evidence that the alleged misrepresentations were material.

In response to the parties' unpersuasive positions in their supplemental discovery brief, and their failure to reach a compromise, the undersigned submitted to the parties a tentative ruling on December 19, 2022. The tentative ruling contained the following search strings, intended to lead to relevant discovery closely tethered to Plaintiffs' claims. The undersigned based these proposed search strings on the operative complaint and the terms in the related document request and any relevant definitions provided with discovery request.

    A. "pasture raised" and "pasture-raised" w/10 (carton or label or advertis* or messag* or Instagram or tweet or Twitter or "social media" or decision* or decid* or deliberate or assess or alternative): relates to RFP Nos. 17, 21, 32, 36, 59.

B. "mislead*"; "decept*"; "deceiv*"; "percept*"; "perceiv*"; "confus*"; "define*"; definition" w/10 (carton or label or advertis* or messag* or egg* or chicken* or hen* or bird* or pasture* or acre* or rais*or rang* or "free range" or "cage free" conditions or "living conditions" or standard* or certif* or inferior or "square feet" or "square foot" or barn or diet or roam or vegetation or sunlight or outside or space or field* or Instagram or tweet or Twitter or "social media" or "8 acres" or "American Humane Association" or AHA and "Humane Farm Animal Care" or HFAC) relates to RFP Nos. 19, 21, 34, 36, 59.

C. "survey*"; "research*"; "conjoint" w/10 (market or consumer or empirical or internal or studies or "expert consultations" or manuals or treatises or publications or "internal guidelines" or memorand* or opinion or recommendation or carton or label or advertis* or messag* or "pasture raised" and "pasture-raised" or "free range" or "cage free" or "supply curve" or price or MSRP or "manufacturer's suggested retail price"): relates to RFP Nos. 32-35, 36, 46-47, 59.

D. "premium*" w/10 ("pasture raised" or "pasture-raised" or "free range" or "cage free" or certif* or "8 acres"): relates to RFP Nos. 29, 31, 59, 65. 66.

E. "Vital Farms" w/10 (carton or label or advertis* or messag* or stud*): relates to RFP Nos. 29, 31, 32, 33, 59.

F. ("line pric*"; or "dynamic pric*") and egg: relates to RFP Nos. 29, 31.

G. "consumer" w/10 "think*"; "consumer" w/10 "prefer*"; "consumer" w/10 "believ*"; "consumer" w/10 "understand*" and (carton or label or advertis* or messag* or pasture* or acre* or rais*or rang* or "pasture raised" and "pasture-raised" or "free range" or "cage free" or certif* or "8 acres"): relates to RFP Nos. 19, 21, 34, 36, 41, 59.

H. ("standard*" w/10 "not"; "standard*" w/10 "meet*" OR "met"; "standard*" w/10 "accept*"; "standard*" w/10 "common*"; "standard*" w/10 "meaning"; "108" w/10 "SQF" OR "S.Q.F." OR "square" OR "feet" OR "sq." OR "ft.") and ("pasture raised" or "pasture-raised" or "free range" or "cage free" or certif* or "8 acres" or "American Humane Association" or AHA and "Humane Farm Animal Care" or HFAC or "organic certif*"): relates to RFP Nos. 6-14, 16, 21, 36, 38, 57, 59, 67.

I. "audit*" and (market or consumer or "pasture raised" or "pasture-raised" or "free range" or "cage free" or certif* or "8 acres" or "American Humane Association" or AHA and "Humane Farm Animal Care" or HFAC or "organic certif*" or "National

Advertising Division" or "Advertising Self-Regulatory Council" or "Better Business Bureau" or "Federal Trade Commission" or FTC or "U.S. Department of Agriculture" or USDA or "U.S. Food and Drug Administration" or FDA): relates to RFP Nos. 36, 37, 38, 55, 57.

Over the course of a two-hour hearing, the undersigned provided the parties an opportunity to present argument as to each of the nine discrete search strings. THG shared that, for one sample custodian, the tentative ruling's search strings yielded just over 38,000 hits, compared to over 68,000 hits based on Plaintiffs' overbroad proposed terms. This indicated that the tentative ruling's more tailored approach significantly reduced the burdens of discovery. Nevertheless, the undersigned removed additional terms where Plaintiffs were unable to establish relevance or a proportional need specific to that term. The search strings in the tentative ruling are modified as follows:

A. For the two additional custodians ordered above (Parkinson and Bryant) this search string shall be applied: "pasture raised" and "pasture-raised" w/10 (carton or label or advertis* or messag* or Instagram or tweet or Twitter or "social media" or decision* or decid* or deliberate or assess or alternative). The parties have agreed to version of this search string for the six existing custodians, and thus, the Court need not address search string A for those custodians.

B. "mislead*"; "decept*"; "deceiv*"; "percept*"; "perceiv*"; "confus*; "define*"; definition" w/10 (carton or label or advertis* or messag* or ~~egg*~~ or chicken* or hen* or bird* or pasture* or acre* or rais*or rang* or "free range" or "cage free" conditions or "living conditions" or standard* or certif* or inferior or "square feet" or "square foot" or ~~barn or diet or roam or vegetation or sunlight or~~ outside or space or field* or Instagram or tweet or Twitter or "social media" or "8 acres" or "American Humane Association" or AHA and "Humane Farm Animal Care" or HFAC).

C. (("survey*"; "research*"; ~~"conjoint"~~ w/10 (market or consumer or empirical or internal or studies or "expert consultations" or "Vital Farms")) AND~~or manuals or treatises or publications or "internal guidelines" or memorand* or opinion or recommendation or~~ (carton or label or advertis* or messag* or "pasture raised" and "pasture-raised" or "free range" or "cage free" or "supply curve" or price or MSRP or "manufacturer's

12

suggested retail price").[2]

D. "premium*" w/10 ("pasture raised" or "pasture-raised" or "free range" or "cage free" or certif* or "8 acres").

E. ~~"Vital Farms" w/10 (carton or label or advertis* or messag* or stud*).~~

F. ("line pric*"; or "dynamic pric*") and egg: relates to RFP Nos. 29, 31.

G. "consumer" w/10 "think*"; "consumer" w/10 "prefer*"; "consumer" w/10 "believ*"; "consumer" w/10 "understand*" and (carton or label or advertis* or messag* or pasture* or acre* or rais*or rang* or "pasture raised" and "pasture-raised" or "free range" or "cage free" or certif* or "8 acres"): relates to RFP Nos. 19, 21, 34, 36, 41, 59.

H. ("standard*" w/10 "not"; "standard*" w/10 "meet*" OR "met"; "standard*" w/10 "accept*"; "standard*" w/10 "common*"; "standard*" w/10 "meaning"; "108" w/10 "SQF" OR "S.Q.F." OR "square" OR "feet" OR "sq." OR "ft.") and ("pasture raised" or "pasture-raised" or "free range" or "cage free" or certif* or "8 acres" or "American Humane Association" or AHA and "Humane Farm Animal Care" or HFAC or "organic certif*").

I. "audit*" and (market or consumer or "pasture raised" or "pasture-raised" or "free range" or "cage free" or certif* or "8 acres" or "American Humane Association" or AHA and "Humane Farm Animal Care" or HFAC ~~or "organic certif*" or "National Advertising Division" or "Advertising Self-Regulatory Council" or "Better Business Bureau" or "Federal Trade Commission" or FTC or "U.S. Department of Agriculture" or USDA or "U.S. Food and Drug Administration" or FDA~~).

Accordingly, the parties shall use the above search strings for their remaining ESI discovery.

**D. Cost-Shifting**

THG has argued that, based on Rule 26(c)(1)(B) of the Federal Rules of Civil Procedure, the undersigned should order Plaintiffs to bear the costs of running any new search strings for the six existing custodians. At the hearing THG specified that it seeks an order requiring Plaintiffs to bear the cost of vendor collection for the six custodians. The cost of collection per custodian is

---

[2] Yellow highlighting indicates text that the Court added.

about $4,000. THG argues that this "supplementation" of discovery is unduly burdensome.

Under the discovery rules, "the presumption is that the responding party must bear the expense of complying with discovery requests[.]" Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978). Nevertheless, a court may protect the responding party from "undue burden or expense" by shifting some or all of the cost of production to the requesting party. Id. (citing Fed. R. Civ. P. 26(c)).

THG did not brief this request or offer case law guiding how the Court should assess this request and determine whether "undue burden or expense" warrants cost-shifting. Fed. R. Civ. P. 26(c)(1)(B). The present record shows that cost-shifting is not warranted at this time. THG assumed the risk of duplicative discovery efforts when it collected the ESI from six custodians. THG never had a guarantee that this Court would agree with its position regarding search terms. TGH could have limited its collection and search of ESI to a sample custodian or two while the search terms remained in dispute. TGH also could have sought guidance from this Court earlier, before collecting and searching ESI for all six custodians. To the extent that a new expense now exists for THG, it is not an "undue" expense. Moreover, the Court has now aided the parties in avoiding unduly burdensome discovery by narrowing additional custodian requests and establishing tailored, narrow search strings. Thus, the Court finds no basis to entertain a cost shifting analysis at this point.

Accordingly, THG's request for cost-shifting is DENIED WITHOUT PREJUDICE.

**II.  CONCLUSION**

Plaintiffs' request for ESI discovery from custodians Ryan Parkinson and Pat Bryant is GRANTED. Plaintiffs' request for ESI discovery from Alexander Kent is DENIED. The following search string protocol is GRANTED:

1. For Parkinson and Bryant only: "pasture raised" and "pasture-raised" w/10 (carton or label or advertis* or messag* or Instagram or tweet or Twitter or "social media" or decision* or decid* or deliberate or assess or alternative).

2. "mislead*"; "decept*"; "deceiv*"; "percept*"; "perceiv*"; "confus*; "define*"; definition" w/10 (carton or label or advertis* or messag* or or chicken* or hen* or bird* or pasture* or acre* or rais*or rang* or "free range" or "cage free" conditions or

14

      "living conditions" or standard* or certif* or inferior or "square feet" or "square foot" or outside or space or field* or Instagram or tweet or Twitter or "social media" or "8 acres" or "American Humane Association" or AHA and "Humane Farm Animal Care" or HFAC).

3. ("survey*"; "research*" w/10 (market or consumer or empirical or internal or studies or "expert consultations" or "Vital Farms")) AND (carton or label or advertis* or messag* or "pasture raised" and "pasture-raised" or "free range" or "cage free" or "supply curve" or price or MSRP or "manufacturer's suggested retail price").

4. "premium*" w/10 ("pasture raised" or "pasture-raised" or "free range" or "cage free" or certif* or "8 acres").

5. ("line pric*"; or "dynamic pric*") and egg: relates to RFP Nos. 29, 31.

6. "consumer" w/10 "think*"; "consumer" w/10 "prefer*"; "consumer" w/10 "believ*"; "consumer" w/10 "understand*" and (carton or label or advertis* or messag* or pasture* or acre* or rais*or rang* or "pasture raised" and "pasture-raised" or "free range" or "cage free" or certif* or "8 acres"): relates to RFP Nos. 19, 21, 34, 36, 41, 59.

7. ("standard*" w/10 "not"; "standard*" w/10 "meet*" OR "met"; "standard*" w/10 "accept*"; "standard*" w/10 "common*"; "standard*" w/10 "meaning"; "108" w/10 "SQF" OR "S.Q.F." OR "square" OR "feet" OR "sq." OR "ft.") and ("pasture raised" or "pasture-raised" or "free range" or "cage free" or certif* or "8 acres" or "American Humane Association" or AHA and "Humane Farm Animal Care" or HFAC or "organic certif*").

8. "audit*" and (market or consumer or "pasture raised" or "pasture-raised" or "free range" or "cage free" or certif* or "8 acres" or "American Humane Association" or AHA and "Humane Farm Animal Care" or HFAC).

//
//
//
//
//
//

1 And THG's request to shift the cost of ESI discovery to Plaintiffs is DENIED WITHOUT
2 PREJUDICE.
3 **IT IS SO ORDERED.**
4 Dated: January 5, 2023

LISA J. CISNEROS
United States Magistrate Judge

16